## Case No. 12,662.

### SEMPLE v. UNITED STATES.

[Hoff Land Cas. 37.] [1]

District Court, N. D. California. June Term, 1855.

**MEXICAN LAND GRANT—BOUNDARIES—CERTAINTY OF LOCATION.**

Under the decision of the supreme court in Fremont v. U. S. [17 How. (58 U. S.) 542], this claim is entitled to confirmation.

Claim for two leagues of land on the Sacramento river, rejected by the board, and appealed by the claimant [Charles D. Semple].

Thornton & Williams, for appellant.

S. W. Inge, U. S. Dist. Atty., for appellees.

HOFFMAN, District Judge. The evidence in this case shows that on the twenty-eighth of June, 1845, John Bidwell petitioned the governor for a grant of land. After the usual reference for information and reports thereon, a grant was issued on the fourth of October, 1845, by the governor, Pio Pico, subject to the approval of the departmental assembly, which approval was given four days afterwards. The genuineness of the grant is not disputed. The land solicited is described in the petition as "the tract of land known by the name of 'Colus,' on the bank of the river Sacramento, which tract is vacant, and contains two sitios, bounded thus: on the north-west by vacant land; on the north-east by the river Sacramento; on the south and south-west by vacant land, as shown by the drawing annexed to this peti-

---

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]

tion." In the grant the land granted is described as the tract of land known by the name of "Colus," on the bank of the river Sacramento, to the north-east direction. Under the evidence submitted to the board, this claim was rejected for want of definiteness of boundaries, or any description sufficient to enable a surveyor to locate it. It was considered by the board "that the only thing which is certain in this description is, that the land is bounded on one side by the Sacramento river. That there is nothing to fix the place along the river where it is located, or to identify a single point where it touched that stream." It was further considered by the board that this defect was unaided by the map which accompanied the petition and forms a part of the expediente, as nothing appeared in the evidence to show why the lines were placed in the position they occupy on the map, or how they are to be found by a surveyor. "They are," say the commissioners, "mere lines on paper, having no monuments or landmarks to indicate the locality. The three sides of the tract which are not identical with the Sacramento river have no description which will not as well be answered by a line drawn in one place as in another through the vacant lands, and there is no description which fixes the front on any specified portion of the length of the Sacramento." To meet the objections stated in the above extracts from the opinion of the commissioners, additional testimony has been taken in this court. By the evidence of John Bidwell, the original grantee, it appears that the original of the map contained in the expediente was made by him in 1845, and presented with his petition to the governor. That there is a very noted point on the Sacramento river, being a high mound, the site of the rancheria, "Colus." The northern boundary begins on the Sacramento at a point just one league above said "Colus" rancheria, and runs directly back from the river at right angles with its general course one league—thence parallel with the general course of the said river and down said river so far as to include two square leagues of land. The tract was intended to be as expressed in the map, two leagues long and one wide. The witness adds, that with the aid of the map and establishing the beginning point as stated, he or any other surveyor could locate it accurately. This testimony of this witness is confirmed by O. M. Wozencraft and L. B. Mizner. The former of these witnesses was, in 1851, United States Indian commissioner, and as such acquired full knowledge that the "Colus" Indians had been on the Rancho de Colus a very great number of years. The tribe, which is the only one of that name in California, inhabited a large mound or rancheria about one hundred and fifty yards from the steamboat landing in the present town of Colusa, between six and eight miles from the Buttes, in a west by north direction, on the west

bank of the Sacramento river. These Indians, known as the "Colus" tribe, were still inhabiting their rancheria on the mound spoken of, as late as 1849, as appears from the testimony of L. B. Mizner. The map, which forms a part of the expediente, indicates the general form of the land solicited, precisely as testified by the witness, Bidwell. It is made with some skill, and is much superior to the rude delineations which accompany most of the Mexican expedientes. The mound, or Rancheria de Colus, is distinctly indicated on this map, and in a position entirely corresponding with that described in the testimony of the witnesses, as appears from the scale attached to the map. It is evident, from an inspection of the map, that if the Rancheria de Colus can be found, a surveyor with the aid of the map could have no difficulty in locating the land. That the rancheria and the mound on which it was situated can be found, the testimony leaves no room to doubt.

We think that the objection of the commissioners, that there are no monuments or natural landmarks to indicate the locality of the grant, and no description which fixes the front on any specified portion of the length of the Sacramento river, is effectually removed by the evidence taken in this court. With respect to the performance of the conditions, it appears that when the grantee first received his grant, in October, 1845, he intended to occupy his land the following summer, but was prevented from doing so by the hostilities which began in 1846, between Mexico and the United States. He, however, employed a man in that year to live upon his land and take charge of it, but he died very shortly afterwards. The witness served in the American army during the war, and in June, 1849, immediately after its conclusion, he built a corral upon his land for his cattle. In January, 1850, he conveyed the land to Semple, the present claimant, who immediately took possession of and occupied it. The excuses for not fulfilling the conditions are, it will be seen, at least as satisfactory as those decided in the case of Fremont v. U. S. [17 How. (58 U. S.) 542] to be sufficient. In this case there has been no unreasonable delay, and the reasons for not occupying the land are such as by an American court should be received with favor. There is no pretense to say that the grant was abandoned, for the grantee seems to have commenced the improvement of his land as soon as the cessation of hostilities permitted him to do so. It is to be observed in addition, that the grant in this case was approved by the departmental assembly, and a complete title passed to the grantee. His grant was thus by the regulations of 1828, definitely valid, and the Mexican title completely divested. The grant in the case of Fremont had never received the approval of the departmental assembly. Whether in any case of a grant made definitely valid by the

approval of the assembly, this court can decree a forfeiture for the breach of conditions subsequent, it is not now necessary to inquire; for the right of the claimant is clear on the principles laid down in the last, as well as on the earlier decisions of the supreme court. No other objections to the confirmation of this claim have been brought to our notice, nor do any others occur to us on an examination of the record in the case.

A decree of confirmation must therefore be entered.

——————

SEMPLE (UNITED STATES v.). See Case No. 16,250.